**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GASPAR LUPIAN GARCIA, | : | CIVIL NO.: 1:24-cv-00194 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LELAND DUDEK, [1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I. Introduction.

In this social security action, Plaintiff Gaspar Lupian Garcia seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons

---

[1] Leland Dudek is now the Acting Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9 -1 to 9-9.*[2] On June 19, 2019, Garcia protectively filed[3] an application for disability insurance benefits and an application for supplemental security income, alleging that he has been disabled since May 14, 2019. *See Admin. Tr.* at 351–59.  After the Commissioner denied his claims at the initial and reconsideration levels of administrative review, *id*. at 72–89, 92–114, Garcia requested an administrative hearing, *id.* at 147–48.  In January 2023, Garcia—who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Richard Guida (the "ALJ"). *Id*. at 38–65.  In January 2023, the ALJ denied Garcia's claims for benefits. *Id*. at 16–36.  Garcia appealed the ALJ's decision to the Appeals Council, which denied his request for review. *Id*. at 1–8.

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Garcia's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In February 2024, Garcia, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claims. *See Doc. 1.* He requests that the court award him benefits or, in the alternative, remand the case for further proceedings. *Id.* at 3 (Wherefore Clause). He also seeks "such relief" as the court deems justified, including attorney's fees. *Id.*

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7.* The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9.* The parties filed briefs, *see docs. 15, 17, 20*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v.*

*Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Garcia is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4] Unlike with disability insurance benefits under Title II of the Social Security Act,

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Garcia met the insured-status requirements through December 31, 2022. *Admin. Tr.* at 22, 24.

"[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20

6

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ

considers all the claimant's medically determinable impairments, including any

non-severe impairment identified by the ALJ at step two of his or her analysis. 20

C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the

sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner,

who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional

capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive

requisites.  Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642

F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson*

*v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On January 31, 2023, the ALJ denied Garcia's claims for benefits. *Admin. Tr.* at 16–36.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Garcia had not engaged in substantial gainful activity since his alleged onset date of May 14, 2019, through that date of the ALJ's decision. *Id.* at 24, 30.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Garcia had the following severe impairments: degenerative disc disease and obesity. *Id.* at 24.  Without naming them, the ALJ also found that all other medically determinable impairments were nonsevere. *Id.* at 25.  But he noted that he "considered all impairments, including those found 'non-severe,' in formulating [Garcia]'s residual functional capacity." *Id.*

## C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Garcia did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 25–26.  Specifically, the ALJ considered Listings 1.15  (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina). *Id.*

## D.  The RFC.

The ALJ then determined that Garcia had the RFC to do light work[5] with some limitations. *Id*. at 26.  He concluded that Garcia is "limited to occasional postural movements" and he "must avoid concentrated exposure to vibration, dangerous machinery and unprotected heights." *Id.*

---

[5] *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

In making this RFC assessment, the ALJ considered Garcia's contentions. He noted that Garcia "alleges disability due to a back injury (herniated disc)." *Id*.[6] And Garcia "stated he has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and completing tasks." *Id*. The ALJ acknowledged that Garcia "stated that [his] pain is constant but becomes worse whenever he performs these activities." *Id*. at 26–27. Garcia "alleges he is unable to work because he has pain from his lower back up to his shoulders occasional pain down his right leg[,]" "his pain is aggravated by bending and sitting, standing and walking for prolonged periods[,]" and "[t]here are times when his right leg feels numb." *Id*. at 27.

The ALJ also considered Garcia's testimony at the hearing. He recounted that Garcia testified "that he experiences pain in the low back, shoulders, right leg and testicle"; that "he uses a cane at times because of his right leg numbness and weakness"; and that "he has tried physical therapy, injections and nerve blocks, but nothing relieves his pain." *Id*. That ALJ also observed that Garcia testified that "he can sit up to 30 minutes at one time"; that "he can walk for a maximum of one hour at a time"; that "he drives his child to school, which takes approximately 15-20 minutes"; and that "[h]e can prepare simple meals and go grocery shopping

---

[6] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

with his wife" *Id*.  Garcia further testified that "[h]e takes medications for his pain, which cause sleepiness and gastrointestinal problems." *Id*.

The ALJ concluded that although Garcia's impairments "could reasonably be expected to cause the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*.

In making the RFC assessment, the ALJ also considered Garcia's medical records and treatment notes. *Id*. at 27–28.  He concluded that Garcia's medical records corroborate his "reports of paralumbar right buttock pain associated with degenerative disc disease and obesity[,] but "the longitudinal evidence suggests that [Garcia] can perform a reduced range of light work." *Id*. at 27.  In support of that conclusion, the ALJ noted that the record "shows diagnoses of postlaminectomy syndrome, lumbar stenosis and lumbar radiculopathy related to these complaints." *Id*.  And as a result of work-related injury, in 2001, Garcia had a lumbar fusion. *Id*.  "Postoperatively, [Garcia] reported intermittent pain that progressively worsened." *Id*.  And although "[h]e treated with pain management, utilized physical therapy and received transforaminal epidural steroid injections[,] [Garcia] reported continued pain despite treatment that is worse with prolonged sitting and standing and sometimes walking and is rated a 6 out of 10." *Id*.  But, the

ALJ noted, Garcia's "pain improved with resting and bending forward[,]" and [d]espite his testimony that nothing relieves his pain, [Garcia] reported good (although temporary) relief with nerve blocks, injections and Diclofenac as well as improvement withTizanidine." *Id*. The ALJ concluded that "[t]his evidence is inconsistent with [Garcia]'s statements." *Id*.

The ALJ also noted that Garcia "reported some bilateral upper extremity paresthesia while laying down at night and that occurred occasionally during the day, but this was relieved by massage." *Id*. The ALJ then summarized the findings from MRIs and x-rays:

> A lumbar spine MRI dated June 2019 showed evidence of prior surgery at L5-S1 as well as posterior disc bulging at L3-L5 that compresses the ventral face of the most prominent dura and slight right predominance in L4-L5 without contact of corresponding roots, canal narrowing at L4-S1; facet hypertrophy and thickening at L3-S1 and dehydration of lumbar discs at L3-L5." An x-ray of the cervical spine in July 2020 revealed only mild cervical spondylosis with neural foraminal narrowing at C4-5 and normal thoracic spine exam. An MRI of the lumbar spine dated April 22, 2021, showed a small disc protrusion at L4-5, moderate facet arthropathy bilaterally, and mild neural foraminal narrowing.

*Id*. at 27–28. And he noted that "[t]here is no evidence of nerve root compression, bladder or bowel involvement, intractable pain, or gait instability related to [Garcia]'s pain." *Id*. at 28.

The ALJ then addressed Garcia's use of a cane. *Id*. Noting that Garcia "generally presents to his medical appointments with a steady gait and without

assistive devices," and that "his treatment records specifically refute that [Garcia] has unsteadiness of gait or that he requires an assistive device for ambulation," the ALJ found that Garcia contention that he uses a cane was not persuasive, and he found the use of a cane is not medically necessary. *Id.* The ALJ also observed that although "[o]n physical examination, [Garcia] has shown abnormality at times, such as a body mass index that exceeds 30 and tenderness," "he typically shows good range of motion, normal gait with no use of assistive devices, no edema, no joint instability, intact neurologic examination, normal sensation, intact reflexes, and good strength." *Id.* And he concluded that "[t]here is no longitudinal evidence of gross instability, markedly diminished range of motion, absent reflexes, loss of sensation, muscle atrophy or motor deficits." *Id.* And "[d]espite [Garcia]'s pain, [Garcia] is 'not sedentary' per his medical providers, he is able to perform his activities of daily living and he is able to drive." *Id.* According to the ALJ, "[t]his suggests that [Garcia]'s statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the evidence as a whole." *Id.*

The ALJ then summarized a consultative medication examination with Nurse Hammon:

> In September 2019, [Garcia] presented to Karena A. Hammon, NP, for a consultative medical evaluation. At the interview, [Garcia] relayed he underwent a prior fusion in 2001 and continues, at times, to walk with a cane. However, he appeared at the examination without any assistive devices. [Garcia] noted he was currently not taking any medication except for

> over-the-counter Aleve.  On physical examination, Nurse
> Hammon observed [Garcia] in no acute distress, with normal
> gait and stance, full squat, negative straight leg raise, no evident
> joint deformity, no sensory deficit, intact upper and lower
> extremity strength, intact hand and finger dexterity and
> strength, and normal range of motion throughout.

*Id*.

In making his RFC assessment, the ALJ also considered the medical opinion

evidence and prior administrative medical findings in the record. *Id*. at 28–29.  The

ALJ first noted that Nurse Hammon opined that Garcia "could lift 50 pounds

occasionally and 20 pounds frequently; carry 50 pounds occasionally and 10

pounds frequently; sit 5 hours, stand 4 hours, and walk 3 hours during an 8-hour

workday; would not medically require the use of an assistive ambulatory aide;

occasionally stoop and crouch; frequently climb, balance, kneel, and crawl; and

tolerate frequent exposure to unprotected heights, moving mechanical parts, and

operation of a motor vehicle." *Id*. at 28.  The ALJ found Nurse Hammon's

opinions partially persuasive. *Id*.  More specifically, he found her "sit, stand and

walking limitations are not persuasive, as they are not supported by the normal

ranges of motion, gait and strength noted on examination." *Id*.  According to the

ALJ, Nurse Hammond's "lifting and carrying limitations also appear to

overestimate the claimant's abilities when compared to the ongoing back pain

reported; however, the finding that the claimant would have postural limitation[s]

is consistent with the claimant's history of pain and obesity." *Id*.  And her "finding

that he does not require an assistive device is consistent with his treatment records documenting the same." *Id.* at 28–29.

The ALJ also considered the October 2019, and March 2020, opinions from the State agency medical consultants, who opined that Garcia could perform a range of light work with some postural and environmental limitations. *Id.* at 29. He found these opinions persuasive. *Id.* He reasoned that "[t]he consultants provided ample supporting evidence and explanation for their findings, including [Garcia]'s history of surgery, his clinical presentation and the notes of normal gait without unsteadiness." *Id.* He also found that the consultant's opinions regarding "the occasional postural limitations and environmental restrictions . . . consistent with [Garcia]'s history of back and leg pain and his history of obesity, all of which could result in mobility issues." And he found the "[t]hese findings are also consistent with the treatment records showing that [Garcia] is not sedentary and can perform his activities of daily living." *Id.*

In sum, the ALJ asserted that his conclusion that Garcia has the RFC to perform light work with limitations "is supported by the prior administrative findings, the opinion of Nurse Hammon in part, the findings via MRI, [Garcia]'s response to medical treatment, and the largely intact findings on physical examination." *Id.*

**E. Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Garcia could not perform his past relevant work as a harvest worker and tree pruner. *Id*. at 29.

**F. Step Five.**

At step five of the sequential-evaluation process, considering Garcia's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as housekeeper, laundry worker, and hand packer—that exist in significant numbers in the national economy that Garcia could perform. *Id*. at 30.

In sum, the ALJ concluded that Garcia was not disabled from May 14, 2019 (which is the alleged onset date), through that date of the ALJ's decision on January 31, 2023. *Id*. Thus, he denied Garcia's claims for benefits. *Id*. at 31.

**V. Discussion.**

Garcia presents numerous claims. We begin by addressing his claim that substantial evidence does not support the ALJ's RFC determination because he relied on outdated medical opinions. Because that claim involves the ALJ's RFC determination and the ALJ's analysis of opinion evidence, before we address

Garcia's specific arguments, we set forth the standards regarding the RFC

assessment in general as well as a brief overview of the regulations regarding

opinion evidence.

### A.  The RFC.

"The ALJ—not treating or examining physicians or State agency

consultants—must make the ultimate disability and RFC determinations."

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  The RFC is

"'that which an individual is still able to do despite the limitations caused by his or

her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359

n.1).  In assessing a claimant's RFC, the ALJ must consider all the evidence of

record. *Burnett*, 220 F.3d at 121.  "When a conflict in the evidence exists, the ALJ

may choose whom to credit but 'cannot reject evidence for no reason or for the

wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting

*Mason*, 994 F.2d at 1066).  The court's "review of the ALJ's assessment of the

plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is

supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL

4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113,

129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's]

residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

In setting the RFC, the ALJ must also clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a

whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

### B. Opinion Evidence.

The regulations regarding the evaluation of opinion evidence are different for claims filed before March 27, 2017 ("old regulations"), on the one hand, and for claims, like Garcia's, filed on or after March 27, 2017 ("new regulations"), on the other hand. The new regulations applicable here have been described as a "paradigm shift" in the way medical opinions are evaluated. *Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. at 280. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Further, under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c). Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions

19

and prior administrative medical findings using the following factors:

(1) supportability, (2) consistency, (3) relationship with claimant,

(4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency. 20 C.F.R.

§§ 404.1520c(a), 416.920c(a).  The ALJ must explain how he or she "considered

the supportability and consistency factors for a medical source's medial opinions

or prior administrative medical findings in" his or her determination or decision. 20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may, but is not required to,

explain how he or she considered the remaining three factors in determining the

persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  But if there are two equally persuasive medical opinions about the

same issue that are not exactly the same, then the ALJ must explain how he or she

considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are defined in 20 C.F.R. §§ 404.1520c(c),

416.920c(c).  As the regulations provide, supportability means: "The more relevant

the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative

medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

"Simply put, supportability is an inquiry geared toward assessing how well a

medical source supported and explained their opinion(s)." *Acosta Cuevas v.*
*Commissioner of Social Security*, No. 20-CV-0502, 2021 WL 363682, at *10
(S.D.N.Y. Jan. 29, 2021*), adopting report and recommendation*, 2022 WL 717612,
at *1 (S.D.N.Y. Mar. 10, 2022).  On the other hand, consistency means: "The more
consistent a medical opinion(s) or prior administrative medical finding(s) is with
the evidence from other medical sources and nonmedical sources in the claim, the
more persuasive the medical opinion(s) or prior administrative medical finding(s)
will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The consistency factor
focuses on "how well a medical source is supported, or not supported, by the entire
record." *Acosta Cuevas*, 2021 WL 363682, at *10.

### C.  The ALJ's RFC assessment is not supported by substantial evidence.

Garcia contends that substantial evidence does not support the ALJ's RFC
determination because he relied on outdated medical opinions.  Nurse Hammon
rendered her opinions in September 2019. *See Admin. Tr.* at 477–89.  And a state
agency medical consultant rendered his opinions on initial review of Garcia's
claims in October 2019, and another state agency medical consultant rendered his
opinions on reconsideration of Garcia's claims in March 2020. *See id*. at 72–89,
92–114.  According to Garcia, significant evidence from after these medical
professionals gave their opinions but before the ALJ issued his decision shows that

his conditioned worsened, but the medical professionals did not have the

opportunity to review that evidence before giving their opinions. *Doc. 15* at 12–15.

Garcia summarizes the evidence at issue:

> . . . In March 2020, Mr. Garcia received an interlaminar and transforaminal epidural injection. July 2020 cervical x-ray revealed cervical spondylosis with neural foraminal narrowing at C4-C5. In July 2020, Mr. Garcia affirmed right paralumbar right buttock pain, and right paracervical and right posterior shoulder girdle pain. He indicated that he slept with his legs elevated. On physical examination, he exhibited tenderness on palpation of his right gluteal musculature, tender points within his mid and lower trapezius on the right side and muscles of his right posterior shoulder girdle region, and positive Maneuvers-Patrick's test. He was diagnosed with sacroiliac joint dysfunction of the right side, discogenic thoracic pain, cervicalgia and status post lumbar fusion. Right sacroiliac joint injection was ordered. Later that month, Mr. Garcia underwent steroid injection of the right sacroiliac joint. In April 2021, Mr. Garcia reported that the injections did not provide significant pain relief. April 2021 lumbar MRI showed central and right paracentral disc protrusion at L4-5, moderate facet arthropathy bilaterally with no central canal stenosis and mild neural foraminal narrowing bilaterally, mild bulging at L3-4, nonspecific enhancement surrounding the facets and pedicle screws at L4-5 and L5-S1 post gadolinium injection. In August 2021, Mr. Garcia underwent right greater trochanteric bursa injection and right SI joint injection. In October 2021, Mr. Garcia underwent right L3, L4 medial branch and L5 dorsal ramus nerve blocks. In November 2021, Mr. Garcia reported sharp and shooting low back pain which radiated down the posterior aspect of the right leg down to the calf. He also reported numbness in his bilateral thighs. The pain progressed in severity and disrupted his sleep and was aggravated by prolonged standing or sitting. A. Hsu, M.D. diagnosed facet arthropathy and recommended repeat L3, L4 medial branch and L5 dorsal ramus block. In January 2022 and March 2022, Mr. Garcia underwent right L3 and L4 medial branch and L5 dorsal

ramus blocks.  In March 2022, Mr. Garcia underwent
radiofrequency ablation of the right L3 and L4 medial branches
and L5.  In August 2022, Mr. Garcia reported that the medial
branch block and radiofrequency ablation provided relief from
back pain for only 2 days.  He affirmed low back pain which
radiated down both legs, worse on the right.  He exhibited
tenderness to palpation over the spinous processes and bilateral
paraspinal muscles and focal tenderness to palpation over the
coccyx.  He was diagnosed with chronic bilateral low back pain
with bilateral sciatica and trigger point injections and coccygeal
nerve block were ordered.  In September 2022, Mr. Garcia
underwent trigger point injections in lumbar paraspinal muscles
and coccygeal nerve block.  In October 2022, Mr. Garcia
reported that the injections and nerve blocks only provided
relief for about 2 weeks and his pain returned thereafter.

*Id*. at 13–14 (internal citations to the record omitted).  Although this evidence was

before the ALJ when he rendered his decision in January 2023, because it was not

before the medical professionals who rendered their opinions years earlier, Garcia

contends that those opinions are not substantial evidence supporting the ALJ's

RFC determination.

At the outset, we note that opinions of state agency consultants "merit

significant consideration." *Chandler v. Commissioner of Social Security*, 667 F.3d

356, 361 (3d Cir. 2011).  And "because state agency review precedes ALJ review,

there is always some time lapse between the consultant's report and the ALJ

hearing and decision." *Id*.  "The Social Security regulations impose no limit on

how much time may pass between a report and the ALJ's decision in reliance on

it." *Id*.  Further, the mere fact that some additional medical evidence is received

after the agency consultant's report does not necessarily mean that the ALJ may not rely on the agency consultant's opinions. *Id.*

Nevertheless, "[a]s a matter of law and common sense, material medical developments which take place after a state agency or consulting expert's review of a claimant's file frequently can undermine the confidence which can be placed in this non-treating and non-examining source opinion." *Dieter v. Saul*, No. 1:19-CV-1081, 2020 WL 2839087, at *8 (M.D. Pa. June 1, 2020). And when the additional medical records show that the claimant's condition and functional capacity appear to have deteriorated in the period between the consultants' opinions and the ALJ's decision, courts have held that the medical opinions do not constitute substantial evidence and have vacated the Commissioner's decision and remanded for further proceedings. *See e.g. Tirado-Negron v. O'Malley*, No. 3:22-CV-01994, 2024 WL 1356706, at *5 (M.D. Pa. Mar. 29, 2024) (vacating and remanding after concluding that "[b]ased on this record, in which Tirado-Negron's physical condition and functional capacity appears to have deteriorated in the intervening period of more than eighteen months, the state agency medical consultants' opinions simply do not constitute substantial evidence of Tirado-Negron's RFC at the time of the ALJ's October 2021 decision, as they were not based on his full medical treatment record"); *Pritchard v. Kijakazi*, No. 3:20-CV-01874, 2022 WL 4647409, at *6 (M.D. Pa. Sept. 30, 2022) ("An RFC

24

determination is not supported by substantial evidence where an ALJ relied solely upon medical opinions that predate the deterioration of a plaintiff's impairments if medical evidence received into the record suggests such post-opinion deterioration."); *McCoy v. Colvin*, No. 3:15-CV-00629, 2016 WL 3031826, at *7 (M.D. Pa. May 25, 2016) (vacating and remanding after concluding that "[b]ased on this record, in which McCoy's mental status appears to have deteriorated significantly in the intervening period, Dr. Rohar's April 2013 mental RFC assessment simply does not constitute substantial evidence of McCoy's mental RFC at the time of his May 2014 hearing and the ALJ's September 2014 decision, as they were not based on his full mental health treatment record"); *Kroh v. Colvin*, No. 3:13-CV-01533, 2014 WL 4384675, at *22 (M.D. Pa. Sept. 4, 2014) ("Based on this record, in which Ms. Kroh's mental status appears to have deteriorated significantly in the intervening period, Dr. Sadar's December 2010 RFC assessment simply does not constitute substantial evidence of Ms. Kroh's RFC at the time of her hearing and the ALJ's decision in January 2012, as it was not based on her full medical record.").

Here, the ALJ relied on the medical opinions in the record when determining Garcia's RFC. But given the significant amount of evidence—including multiple diagnostic studies, diagnoses, and treatments—that was before the ALJ but not the medical professionals who opined on Garcia's limitations, we cannot reliably

conclude that the medical professional's opinions would have been the same had they had this additional evidence. And although the ALJ did discuss some of the new medical evidence, he did not have the benefit of a medical opinion on such. In sum, given the volume of new records, the kind of records at issue, and that the new records arguably show a decline in Garcia's condition, we cannot say that the ALJ's RFC assessment, which relied on medical opinions issued before the new medical evidence, is supported by substantial evidence. And since we cannot conclude that the ALF's RFC assessment is supported by substantial evidence, we will vacate the Commissioner's decision.

### D.  Other Claims.

Because we conclude that the Commissioner's decision must be vacated because there is not substantial evidence to support the ALJ's RFC assessment, we will not address Garcia's remaining claims of error. "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020). "A remand may produce different results on these claims, making discussion of them moot." *Id*.

### E.  Remand is the appropriate remedy.

Because the ALJ's decision is not support by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Garcia.  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any

decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Garcia's claims, and we cannot say that substantial evidence on the record as a whole shows that Garcia is disabled and entitled to benefits.  Thus, we will remand the case to the Commissioner for further proceedings.

## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge